Good morning. May it please the court. I'm Ed Robinson on behalf of Mr. Richards and with your permission Ms. Young and I have divided our time equally and she's graciously allowed me to go first. Thank you. I'd like to reserve a minute if I may. Certainly. Watch the clock please. Yes I will. Your honor, the district court in calculating Mr. Richards' sentence at the third sentencing made a procedural error by not considering two things. What the arguments were in support of the base offense level for Mr. Richards but also how to calculate the specific offense characteristic regarding loss. How did this make any difference? It makes a difference in this way your honor. The billboard conduct is now non-criminal. Yet the government relied on the billboard conduct as did the probation office in coming up with the subjectively desired intended loss. If the government and the probation office is going to rely on using the non-criminal billboard conduct to come up with that loss figure then the offset provisions of the guidelines apply. The argument that I made at sentencing and that has been briefed for you is two-fold. If the government is going to rely and the district court is going to rely on the now non-criminal billboard conduct and assign 2.9 million dollars worth of loss. Well if you take that out then what's the total loss? If you take that out it's still above 2.5 but I made arguments that the offset in the amount of money that the city of Linwood had already received and the value of that contract which were services to be rendered that had been garnered by AGS by Mr. Richards, the offset affects the specific offense characteristic level. But if we don't find the offset argument persuasive then the loss would still be a plus 18? If you don't find the, yes it would be plus 18. So the second part of my argument is that if the government is going to use and the district court is going to rely on that significant amount of loss in determining a sentence and if the government's argument is among others that even though that conduct has been deemed non-criminal because those counts have been vacated, it's still part of an overarching money and property fraud scheme. If it's part of an overarching money and property fraud scheme then the base offense level shouldn't be 2C1.7 which calls for 10 levels. It should be 2B1.1. You can't have it both ways. This is a powerful argument if we're still in the guideline era but we're not and the district judge went below the guideline. I appreciate that Your Honor but as far as procedural error is concerned under Carty, under Gall, a remand is mandated if there's procedural error in calculating the guidelines and failing to state sufficient reasons for a sentence. The district court made findings that included, well I'll quote the district court, what really dictates are the facts not necessarily the arguments as to what appropriate and what's not and what guideline levels are appropriate or not is really dictated by the facts and I think that the appropriate guideline level remains to be 36. So there was no reason given by the district court as to why the district court relied on the same guidelines that it applied pre-Booker or immediately after Booker and at both prior sentencing. But at the end of the day the judge didn't really pay attention to the guidelines. He bought your arguments and mitigation and lowered the sentence. Well he didn't buy my argument with respect to which base offense level applied and how the offset provisions should apply. But he lowered, you're below the guideline range. And I think he would have given a below guideline range sentence based upon Mr. Richard's significant personal history and characteristics which he found to be mitigating. The court also found some discrepancy or confusion between the actual and the intended loss and that wasn't argued. That's not part of Mr. Richard's argument either at sentencing or on appeal. What was Mr. Harris' sentence? It was 60 something months, right? 166 months, yes. With a guideline range of? His guideline range was 188 to 235. So your argument is that if he had started with a lower base offense level he would have departed even further from the 66 month sentence that your client eventually received? Not departed, varied. But if the judge had selected 2B1.1 based upon the government's argument that at least the regency contract billboard loss is part of an overarching money and property fraud scheme, then there would have been a four level difference. And that four level renders a range of 121 months at the low end. And so that's a significant piece of time there. And then the reasons that the judge relied on in order to vary as he did at this sentencing would still apply because there may still be confusion between the actual and the intended loss which was not argued at sentencing. But also Mr. Richard's personal history and characteristics were so mitigating that Judge Klausner did vary downward by 20 months. But I'm talking about procedural error. In this argument I'm not really discussing the substantive reasonableness of the sentence. Even though the substantive reasonableness of the sentence may appear to be all right, if there's error in calculating the guidelines then there must be a remand for resentencing. And that is my argument with respect to the judge clearly not considering or not stating reasons as to why he didn't apply the offset that I argue clearly applies on this non-criminal conduct, the billboard conduct, and also does not resolve the dispute with respect to which base offense level applies. And with that, Your Honor, if there are any questions I'll field them now. I'll defer to Ms. Young on behalf of Ms. Harris. Thank you. Thank you. Good morning, Your Honors. Katherine Young from the Federal Public Defender's Office for the Appellant, Paula Harris. And I will reserve, try to reserve about three minutes for Mr. Robinson and myself for rebuttal. And the first thing I want to turn to is the issue of whether or not the guidelines error in this case should be meaningful even though the district court did give my client a 12-month reduction. We're contending that the actual guidelines was in the range of 30 months, which means even a 12-month reduction from a guideline range of 78 months is still significant. And this Court has held and the Supreme Court has held the guidelines are the starting point, they're the benchmark, they're to be kept in mind throughout the sentencing process. And therefore, any guidelines error is satisfied the third and fourth prong of plain error and it's an error that must be remanded for resentencing. But now I want to turn to how in Ms. Harris' case the guideline error was significant. We argue in our briefs that the district court erred in calculating the guideline range and her sentence was unreasonable. The district court rejected all Ms. Harris' objections to the PSR and refused to reconsider the sentencing guideline range, saying it was not going to change. But Harris was significantly differently situated in 2013 than she was in 2006. There were three AGS contracts with which Ms. Harris was involved, the nuisance, the billboard, and the CBL contract. In 2006, she had honest services convictions on all three contracts. In 2013, she only had honest services convictions on one of those contracts. That means that the honest services guideline range, which drove the sentencing, was invalidated in 2013. How so? She still had an honest services conviction. She did, but the reason that the honest services guideline was chosen as the guideline was because of the enhancements. Because the PSR and the government said you calculate the guideline range for honest services fraud, for money and property fraud, and for money laundering, and you select the highest. In 2006, the honest services guideline was the highest because she had honest services liability and exposure on three contracts. You get to 2013, she's got honest services exposure on one contract, and there's no intended loss on that contract. Therefore, in 2013, you only have the base offense level of 10 for honest services fraud. For money and property fraud, she still has exposure, and there you get an increase in the guideline range for loss, because there is loss, and there's a dispute among the parties as to exactly what the calculation of that loss was. But still, it's higher than the honest services fraud guideline. And therefore, when they were taking the honest services guideline as the base range, that no longer applied in 2013, because there was no enhancement. There was no intended loss on honest services liability, and that's why it made a significant change in her guideline range. And to go on. You start with the base, and in calculating the base, you take the most serious count, generally the count that results in the highest base offense level. So your argument is that you've got to calculate and use as the base the count that results in the greatest offense level after you figure in loss and everything else. All the enhancements are included in the calculation of the base, is your argument. Am I understanding your argument correctly? No, I'm not sure. What I'm arguing, and what the government and the PSR argued, is that you calculate three offense levels, not just base, but entire offense levels. You calculate the offense level for money and property fraud. You calculate the offense level for honest services fraud. You calculate the offense level for money laundering. And you choose the highest level of those three levels. So not just the base, but also the enhancements. You don't mix and match. You don't take the base level from one type of offense and apply enhancements for another offense. You calculate the entire offense level for each of the different offenses. And that's what the government and the PSR argued. And in this case, we're arguing that while honest services might have been the highest total offense level in 2006, when Ms. Harris had liability, honest exposure liability, on three contracts, in 2013, when she had honest services liability on only one contract, and that contract bore no intended loss, then that base level became the lowest base offense level, and then you would turn to the money and property fraud offense level. And our argument is that that was the way the government calculated. That was the way the PSR argued it should be calculated. And we've also argued in the brief that the way to do otherwise in this case, to mix and match offense levels and enhancements, would violate this Court's sentencing guidelines and this Court's precedent. We pointed out that the Honest Services Guidelines, Section 2C1.7, states that the guideline applies only to offenses committed by public officials or others acting with them that involve depriving others of the intangible right to honest services. In other words, the guideline itself says you don't enhance the guideline with loss that is not honest services loss. We've also cited the Pinckney case, which says you don't enhance a defendant for conduct that the client was found not guilty of. And Ms. Harris was found not guilty by this Court, or was found that the honest services counts on the other two contracts, she was not liable for them, that was this Court's 2012 decision. And now I want to reserve some of our time for rebuttal, unless this Court has some questions. Certainly. Thank you. May it please the Court, Assistant United States Attorney Lawrence Middleton, appearing on behalf of Appellee United States of America. I'd like to start with Defendant Paula Harris. Right now, Defendant Harris stands convicted of five counts of honest services mail fraud, five counts of money and property mail fraud, four counts of money laundering, and one count of perjury before a federal grand jury. Now all of those convictions stem from her involvement in a scheme with her co-defendant, Defendant Richards, in which they used his position and what was essentially a shell company to defraud the city of Linwood. And Defendant Harris was an active participant in those schemes. And notwithstanding her participation in each of those schemes, her argument now is that a 66-month below-guideline sentence was unreasonable. And a large part of the basis for that argument is her claim that the district court misapplied the guidelines. And the defense in arguing their case refers to what the government's argument is with respect to the guidelines. And in fact, what the defense is suggesting is the government's argument is not the government's argument at all. The government believes it is very clear that the court did not misapply the guidelines, nor did the probation office in preparing the pre-sentence report. As a general rule, the guidelines require that the court apply the guideline that's going to result in the highest offense level. Which is honest services fraud. Which is honest services fraud in this case. And the probation office in doing the pre-sentence report determined that in order to get there, where you start is with the money laundering guideline. And the money laundering guideline says that the court should look at the underlying offense for where the laundered funds were derived from. And in this case, this court's prior decision made it clear that the money laundering counts in this case were based on a permissible theory of honest services fraud. And that honest services fraud is clearly the CBL contract. So in determining what the offense level is, the first thing that this court or that the district court had to do was look at the money laundering guideline and from there look at where the money came from that was laundered. And that was from honest services fraud. It's clear in this case that, first of all, under the CBL contract, AGS was receiving $7,500 a month for well over a year, including the time period when the financial transactions that constitute the money laundering were made. Now the guidelines also say that when there are multiple underlying offenses, then you basically have to group those offenses. And in this particular case, what the defense is saying is that she should have been sentenced based on the money and property fraud guideline. But where there are multiple guidelines, you have to group. And in this case, that's what was done. And not only do you have to group, Your Honor, but what the guidelines say is under 3D1.2D, where the loss calculation is essentially based on a monetary loss, you group all of those counts into a single group. So what we're talking about is aggregating the loss amounts. Now the defense's argument here is that, well, there is no intended loss associated with the money laundering. But that doesn't affect the requirement that you group. If there are money laundering convictions underlying the, I'm sorry, if there are honest services convictions underlying the money laundering, you have to take those counts, and you have to group them. And it doesn't really matter whether the loss for a particular count is $1, $0, or $1 million. What matters is the aggregate, because that's what you do when it's all based on monetary loss. And so in this particular case, when you aggregate, you come up with a specific dollar amount, which is what the court did and what the probation office did. But once you aggregate that amount, what the guidelines say you do then is look to the underlying offense that would then, when added to the aggregate amount, produce the highest offense level. So taking the aggregate of all the counts that go into this mixture. Which was how much? It was in excess of $2,500. And again, that's a different argument, because the government is saying it's in excess of, I'm sorry, $2.5 million, because you still should include the losses that are associated with the billboard scheme, which I'll get to. But because it's over $2.5, and because the guideline for honest services fraud, when added to that aggregate, produces the highest offense level, that's the guideline that you use. And so even though there are a number of counts that were reversed, it really doesn't change the way you go about calculating the guidelines. It doesn't change the methodology, because when you start with the money laundering guideline and you look to the underlying offense for the funds that were laundered, you still go back to honest services fraud. Now, another part of the procedural error argument is that the district court miscalculated the loss amount. Now, it is true that the government had charged honest services fraud based on the billboard scheme, and it is also true that in light of skilling, the government had to dismiss those specific counts. But the government does not now, nor has it ever maintained, that that underlying conduct was not criminal. And in fact, the government to this day maintains that that conduct was not only charged as an honest services fraud scheme, but it was also a money and property fraud scheme. And if you look at the way the indictment is laid out, that's very clear, because it describes the scheme and it describes multiple objects under that scheme, one of them being honest services and the other being money and property. And then it lists the billboard scheme under that particular part of the indictment. So what the government is saying is there may not have been a specific money and property count in the indictment, but certainly when you look at the underlying conduct, and the underlying conduct, which was proven beyond a reasonable doubt at the trial, is certainly proven. And the only problem with that was that there was no bribes, so you couldn't have honest services fraud. But you can still have money and property fraud, and the government is saying that's what you have. What about the waste hauling contract as it pertains to Harris? Now, the government has conceded at this point that she should not be held responsible for that particular conduct. And so if you take that out and you don't include the… So you take that amount out of the restitution as well as the calculation of the loss enhancement? We're doing that in both instances, Your Honor, that's correct. And it would still be a plus 18 because it's over $2.5 million. And the government is saying it would still be a plus 18 because we're saying that even though the honest services fraud for the billboard contract has been dismissed, it still should be included because we believe it is charged as money and property. And we believe that based on the evidence that was presented, it's proven. What do you mean you say it is charged as money and property? I don't quite follow that. Well, Your Honor, what we're saying is the way it's laid out in the indictment. The indictment lays out a scheme to the fraud that includes two objects, one of the objects being honest services fraud, the other object being money and property fraud. Now, then it lists specific mailings for the counts. And it includes specific mailings in support of honest services fraud. It didn't include specific mailings in support of money and property fraud. And what the government maintains is that the government wasn't required to have specific mailings for the money and property fraud where money and property fraud is clearly charged as part of the scheme. And so even though the defendant may argue, well, I'm not guilty of honest services fraud, and the government agrees, the government believes that that conduct still constitutes money and property fraud. And in fact, I would take it a step further and say even though we had to dismiss the specific robbery counts, at least one of the mailings that was part of the honest services fraud could in fact be used to support a money and property fraud. The other argument the government would make, Your Honor, though, is in addition to the fact that we believe it's charged, it's also clearly relevant conduct under the relevant conduct provisions of the guidelines. It's clearly part of a common scheme or course of conduct. First of all, it's all charged together as a common scheme. It's consistent with the other schemes that Defendant Harris was engaged in. First of all, it includes Defendant Richards as a co-defendant who uses his position as an elected official to steer contracts to AGS, which was the essential shell company that was headed by Defendant Harris. And so it has all of the earmarks of the conduct that she still stands convicted of. So it's clearly part of the same scheme. It's a common scheme or plan. And under the relevant conduct provisions, the losses associated with the billboard scheme should be included for that reason. So the government feels that notwithstanding the dismissal of the honest services fraud counts, she should still be held responsible for that conduct because, again, it is criminal conduct and it's relevant conduct. Now, I guess the other argument the defendant makes, and I'm not sure that she addressed it specifically today, was that there was a violation of Rule 32 because the court did not change an objection that she made to the pre-sentence report. And the government's response to that is, well, first of all, there's no reason to believe on the record that the court relied on that error because it was never mentioned throughout the entire sentencing proceeding and it never has been really mentioned at the proceedings, even though it's been raised since the very first sentencing in this case. The other point the government would make is that it's not clear that it's even a disputed or controverted fact as contemplated by Rule 32. And that is true because the government has consistently agreed with the defense that the defendant did not commit the conduct that's stated in that specific paragraph of the pre-sentence report. So everybody was on the same page. And not only that, but when the government argued the case before the district court, it made it clear that the court should not impose any liability on the defendant because of what's stated in that particular paragraph, but if for any reason because the conduct that she engaged in was foreseeable to the defendant. So the government would submit that there is no real Rule 32 error that would require a remand in this case. What do you have to say to Mr. Richards' argument about the guideline calculation? Your Honor, the government's response to Mr. Richards is that first of all, his argument about the application of the guidelines and the requirement that the court use the 2B1.1 money and property fraud guideline as opposed to the honest services fraud guideline fails for the same reason that it fails for Defendant Harris because it's a misreading of the way the guidelines are applied. The court correctly applied the guidelines. There's really almost no change in Defendant Richards' case that would make any difference in the guidelines calculations. Well, as I gather, his argument is that if you had a different guideline calculation, perhaps at sentencing, a different point of departure, the judge might have gone even lower. Well, that's true, Your Honor, except that there's no basis for a different guideline calculation because the arguments that he makes simply are erroneous. I mean, his argument for how the guidelines should be applied is in error. And also, Your Honor, to be very clear, the counts that were dismissed against this defendant would evolve around the billboard contract. You can take those out of his calculation, and Defendant Richards is still over the $2.5 million threshold for the court to impose the 18-level enhancement. So there are no dismissed counts that really affect the guideline range for this defendant. And his argument for offsets really makes no sense because when you look at the billboard scheme, what you have here is Defendant Richards going out as a mayor and city council person and making a billboard deal for the city, and then coming in after he's made that deal and bringing AGS, which again is essentially a shell company, and saying that AGS should get 20% of the deal for finding this contract when in fact AGS had nothing to do with finding the contract. And so what they're saying is that 20% of a deal that the city council person made should go to a company that had nothing to do with it. AGS added no value and provided no services. So to the extent that there was a $10 million deal that was negotiated by Defendant Richards, $10 million should go to the city. And to the extent that $2 million goes to AGS, that's a loss. And if there's a loss, there's no offset. So regardless of how you look at this case, there is simply no basis for an offset in this case. And in fact, when you look at the offset provisions, and the government cites a case from a different district, there's no offset applicable where there's no value added. And AGS doesn't add value, and Defendant Richards isn't entitled to credit for bringing in a contract to the city when he's an elected official and has a duty as a public servant to the city. So there's no basis for an offset. Thank you, Counselor. You're over time, so unless my colleagues have any questions. Thank you very much, Your Honor. Thank you, Your Honor. Thank you, Your Honors. Mr. Richards' counsel has asked that I leave him 45 seconds for rebuttal. Mr. Middleton several times said let's look at the money and property fraud, the money laundering guideline, and let's look at that guideline. Because under that guideline, her offense level will be substantially reduced. Because Mr. Middleton said that the CBL contract is a predicate offense for the money laundering. In fact, it is not. Counts 26 through 29 are money laundering. They are all based on the nuisance contract. The nuisance contract only exists in money and property fraud. It is not CBL. But even if you set aside that, even if you set aside the terms of their own indictment, the only liability that Ms. Harris can have for money laundering is CBL and the nuisance contracts. Very low, because she got no money on Regency. She got no money on waste management. That's $5 million of loss that she can't be liable for on money laundering because she had no funds to launder. So we'd be fine with money laundering. She'd be in a substantially lower offense level. Mr. Middleton also said that you group, he was saying that you mix and match various counts. In fact, what the PSR said is that you choose the offense level, PSR 105. The offense level for the single group of counts is derived from the account resulting in the highest offense level. You don't take the base level from one count and enhance it for another. You look at the entire offense level. And, in fact, I cited the language on the services guideline that says that's only honest services fraud. When you look at the guideline talking about counts, it cites an example of where you do not cross-reference counts of securities fraud and bribery, which are similar to the money and property fraud and honest services fraud that we have in this case. And then unless there are any other questions, I'll cede the rest of my time to Mr. Richard's counsel. Thank you, Counselor. Thank you. I wish we were arguing on the conviction right now because I think there would be a great variance argument based upon what the government argued to you in their position. The indictment is clear about what is a money and property fraud and what is an honest services fraud. The record is clear that the government tried this case with respect to the billboard contract on a failure to disclose pre-skilling theory. They didn't argue money and property fraud. And the record doesn't support the new position that the inclusion of the regency, the contract, billboard contract loss is part and parcel of the upward adjustment. If that's the case, if the government and the district court is correct in concluding that the billboard contract can be considered as part of the loss, then the offset provision does apply because the services rendered by Mr. Richards on behalf of the city brought in a contract that the city later tried to get back because of what had occurred with Mr. Reyes of $4.5 million. That offsets the $6.9 million. The specific offense characteristics of loss is different now at least two levels. There's procedural error, and I ask the court to remand the case for resentencing. Thank you. Thank you very much, counsel. Thank you all. We thank both sides for your arguments. The matter is submitted for decision.
judges: Fernandez, Parker, Nguyen